UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

Herbert S. Moncier, *et al.*,  )
  )
   *Plaintiffs*,  )
  )
v.  )   Case No. 3:14-CV-353-PLR-CCS
  )
Bill Haslam, *et al.*,  )
  )
   *Defendants*.  )

## Memorandum Opinion

Plaintiff Herbert S. Moncier filed the action on July 29, 2014, seven days prior to Tennessee's August 7, 2014 election. Mr. Moncier asked this Court to declare the State of Tennessee's procedures for selecting and retaining appellate-court judges unconstitutional. He further sought injunctive relief to, among other things, prevent the State from counting retention votes or seating the judges retained in the general election held August 7, 2014. This is not Mr. Moncier's first challenge to Tennessee's judicial election laws. In fact, in October 2013, he filed a case before Chief District Judge Varlan making an identical challenge. *Moncier v. Haslam*, Case No. 3:13-cv-630-TAV-HBG (E.D. Tenn. 2013) ("*Moncier I*"). That case was dismissed because Mr. Moncier lacked standing. For the same reason, this case will also be dismissed.

**1. Background**

This action primarily concerns Mr. Moncier's dissatisfaction with the State of Tennessee's approach to selecting, evaluating, and retaining appellate judges. The "Tennessee Plan," codified at Tenn. Code Ann. §§ 17-4-101 through 17-4-116, provides that if a vacancy occurs in the office of an appellate-court judge after July 1, 2009, by death, resignation, or otherwise, the governor shall fill the vacancy by appointing one of three nominees selected by a

Judicial Nominating Commission (the "JNC"). Tenn. Code Ann. 17-4-112(a)(1).[1] If an incumbent appellate judge decides to not seek retention for another term, the Tennessee Plan provides that a vacancy would be created in the office upon the expiration of the incumbent's term on September 1. The vacancy would then be filled by the Governor, and the newly appointed judge would be subject to a retention election for the remainder of the term at the next regular August election. Tenn. Code Ann. § 17-4-116(a).

On May 24, 2013, Judge Joseph M. Tipton, a Tennessee Court of Criminal Appeals judge, notified the Governor that he would not seek retention for another term in the August 2014 election. Accordingly, the JNC submitted nominees to fill the vacancy, and Governor Haslam appointed Robert H. Montgomery, Jr. to fill the position.

Mr. Moncier is an attorney who has stated he is interested in filling Judge Tipton's seat; however, Mr. Moncier failed to submit his name to the JNC for consideration. Instead, he requested that Coordinator of Elections Mark Goins allow his name to be placed on the August 2014 ballot as a candidate for office. Mr. Goins denied the request, referring him to the "Tennessee statutes that provide for the manner judges are appointed and stand for election in Tennessee."

On October 18, 2013, Mr. Moncier filed a lawsuit against Governor Haslam and Mark Goins seeking declaratory and injunctive relief on behalf of himself and the people of the State of Tennessee. *Moncier v. Haslam*, Case No. 3:13-cv-630-TAV-HBG, R. 1 (E.D. Tenn. 2013). In *Moncier I*, the plaintiff argued that the Tennessee Plan violates his First and Fourteenth Amendment rights by denying him access to the August 2014 ballot and the right to political association.

---

[1] The JNC was terminated pursuant to Tenn. Code Ann. § 4-29-112 on June 30, 2012. It completed its wind-up period on June 30, 2013. On October 16, 2013, Governor Haslam issued Executive Order No. 34, establishing the Governor's Commission for Judicial Appointments to assist in the appellate selection process.

On February 28, 2014, the court in *Moncier I* issued a memorandum opinion finding Mr. Moncier lacked standing because he alleged generalized grievances involving abstract questions of wide public significance as opposed to a request for relief from a concrete and particularized injury. Accordingly, the court dismissed the complaint for lack of subject-matter jurisdiction. *Moncier I,* at R. 40. Mr. Moncier appealed to the Sixth Circuit, which affirmed the district court's ruling. *Moncier v. Haslam*, 2014 WL 2958429 (6th Cir. June 30, 2014). Mr. Moncier then filed a petition for rehearing en banc with the Sixth Circuit that was denied on July 29, 2014.

The very same day, Mr. Moncier filed the instant lawsuit against Governor Haslam, the Tennessee State Election Coordinator, the Tennessee Attorney General, every appellate-court judge in the State of Tennessee, and all the members of the Knox County Election Commission. [R. 1]. Mr. Moncier once again seeks a declaration that the Tennessee Plan violates the First and Fourteenth Amendments of the United States Constitution. Additionally, Mr. Moncier filed a motion for a preliminary injunction to move the Tennessee general election for Tennessee appellate court judges from August 7, 2014 to November 4, 2014 and to stay Governor Haslam's appointment of the appellate judges to new terms of office beginning September 1, 2014. [R. 3].

On August 18, 2014, Mr. Moncier also filed an application for a temporary restraining order to, among other things, enjoin the Knox County Election Commission from certifying the results of the August 7, 2014 ballots for Tennessee's appellate court judges; require the Knox County Election Commission to count and certify Mr. Moncier's write-in votes for appellate judges; to enjoin the State Election Coordinator from accepting a report of the results of the August 7 election of the Tennessee appellate judges; to enjoin the Governor from counting the votes cast in the August 7 election; and to enjoin any defendant judge named in this action from

3

taking an oath of office as an appellate-court judge on or after September 1, 2014. [R. 12, p. 3-4].

The defendants responded in opposition to Mr. Moncier's motion for a preliminary injunction on August 15, 2014. [R. 7]. They moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim on August 19, 2014. [R. 9]. Finally, the defendants responded in opposition to Mr. Moncier's application for a temporary restraining order on August 28, 2014. [R. 19]. The Court held a hearing on the applications for injunctive relief on August 29, 2014. The motions for injunctive relief as well as the defendants' motion to dismiss are ripe for the Court's consideration.

## 2. Discussion

### A. Motion for leave to reply

As an initial matter, on August 28, 2014, Mr. Moncier moved for leave to file a reply to the defendants' response in opposition of the application for a preliminary injunction. [R. 18]. The motion is granted, and the Court will consider Mr. Moncier's reply in ruling on the present motions.

### B. Mr. Moncier lacks standing to challenge the Tennessee Plan.

Federal courts have long imposed prudential limitations on the exercise of their jurisdiction. *Moncier v. Haslam*, 2014 WL 29587429, at * 3 (6th Cir. June 30, 2014) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Barrows v. Jackson*, 346 U.S. 249, 255–56 (1953)). "Under these prudential limitations, courts should refrain from exercising jurisdiction when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Id.* (internal quotations omitted) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir.2009)).

Mr. Moncier's first complaint alleges he has standing under 23 separate grounds or legal theories. [R. 1, p. 5-12]. His amended complaint increased the number of theories to 34. [R. 15, p. 9-20]. In Mr. Moncier's proposed second amended complaint, the number increased yet again to 37.[2] [R. 24-1, p. 10-23]. However, despite the wild array of different grounds, theories, doctrines, statutes, and rights Mr. Moncier contends will give him standing, the relief sought is simply based on the fact that he cannot, in all instances, vote to elect the judges of the Tennessee appellate courts in the manner he would prefer. This is a plainly undifferentiated injury that is common to all members of the public. *Moncier v. Haslam*, 2014 WL 29587429, at *5 (6th Cir. June 30, 2014).

As the Sixth Circuit noted in *Moncier I*, this lawsuit is the latest in a long line of cases challenging the Tennessee Plan. *Id.* at *4; *see also Hooker v. Haslam*, 2014 WL 1010367, at *2 n.3 (collecting unsuccessful challenges to the Tennessee Plan based on various state and federal constitutional grounds). Mr. Moncier's challenge to the Tennessee Plan suffers from the same shortcomings as many of these previous cases, including *Moncier I*. "Rather than asserting a 'particularized stake in the litigation,' Moncier's complaint [in *Moncier I*] contained mostly general allegations that the manner in which Tennessee selects and retains its appellate-court judges violates his rights *and the rights of all Tennessee voters* under the First and Fourteenth Amendments." *Id.* at *5 (emphasis in original). The same is true of the present case.

Mr. Moncier has in no way distinguished the present case from *Moncier I*. He does cite a handful of cases that have been decided in the meantime, however, none of the new cases cited

---

[2] Some of the grounds asserted for standing include:
- Oath as an Attorney – Mr. Moncier contends he has standing as an attorney sworn to protect the constitutions of the State of Tennessee and the United States of America
- Because he supports popular elections for Tennessee appellate-court judges
- Because he belongs to a class of persons who oppose Governor Haslam enacting laws to appoint judges
- As a local taxpayer to protect Knox County tax revenues being lost on unconstitutional judicial proceedings

5

have any meaningful effect on the outcome. Additionally, the changes in fact alleged by Mr. Moncier do not make his challenge to the Tennessee Plan any more concrete or particularized than before. For example, Mr. Moncier contends, since the district court decided *Moncier I*, 21 incumbent appellate judges were qualified by the JNC to be the only candidates with access to the August 7 ballot, thereby prohibiting Mr. Moncier from politically supporting any other candidates for those offices. [R. 15, p. 4]. He also contends he cast write-in votes for 29 Tennessee appellate judges—votes the state will not count. [R. 15, p. 6]. None of these "material new events" transform Mr. Moncier's challenge of the Tennessee Plan into anything more than a generalized grievance common to any Tennessee voter.

**C. There is no federally protected interest in appearing on the ballot for state-court judge.**

To the extent Mr. Moncier does allege particularized injury – in that he personally was prevented from appearing on the ballot or having his write-in votes counted, Mr. Moncier's claims fail as a matter of law and dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate.

Mr. Moncier has no federally protected interest in appearing on a ballot to be a candidate for state-court judge when Tennessee law, as interpreted by the Tennessee Supreme Court, requires appellate-court vacancies be filled by gubernatorial appointment. *Moncier v. Haslam*, 2014 WL 1010367, at *6-7; *see* also *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("The right to become a candidate for state office ... is a right or privilege of *state* citizenship....") (emphasis added); *Newman v. Voinovich*, 986 F.2d 159, 161, 163 (6th Cir. 1993) (affirming dismissal under Rule 12(b)(6) of a suit challenging Ohio's judicial-appointment procedures under the First and Fourteenth Amendments); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) ("Public office is not property within the meaning of the Fourteenth Amendment."); *Wilson v. Birnberg*, 667 F.3d 591,

6

598 (5th Cir. 2012) ("[T]here is no constitutional right to run for state office protected by the Fourteenth Amendment." (citation and internal quotation marks omitted)); *Velez v. Levy*, 401 F.3d 75, 86–87 (2d Cir. 2005) ("[Plaintiff] lacks a constitutionally cognizable property interest in her employment as an elected official.").

Again, as he argued in *Moncier I*, Mr. Moncier repeatedly cites *Anderson v. Celebrezze*, 460 U.S. 780 (1983), for the proposition that candidate eligibility requirements implicate basic constitutional rights. However, *Anderson* is distinguishable in that it presupposed that state law requires an election in the first place. *Id.* at 782 (reviewing Ohio's process for presidential candidates to qualify for the general-election ballot). *Anderson* does not mandate that "states organize their governments in a particular manner or provide for the election of state-court judges." *Moncier v. Haslam*, 2014 WL 1010367, at * 7. *Anderson* also does not stipulate how states must fill vacancies in office or when states may deem the particular office vacant. *Id. Anderson* is, quite simply, inapplicable to the present situation because Tennessee law does not provide for an open election for appellate-court judges.

Accordingly, to the extent Mr. Moncier has standing due to his limited efforts to become a candidate for appellate-court judge and his attempts to write-in votes for himself and others, Mr. Moncier's challenge to the Tennessee Plan will be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**D. Motions to amend or revise the complaint**

On August 29, 2014, Mr. Moncier filed a motion for leave to file an amendment to the amended complaint. [R. 20]. Mr. Moncier seeks to amend the complaint to challenge Tenn. Code Ann. § 2-7-133(i), which governs the notice requirements for candidates to get write-in

7

votes counted. Mr. Moncier contends this code section unduly burdens Tennessee's voters' First and Fourteenth Amendment rights.

Mr. Moncier thereafter filed a second motion to revise his amended complaint to substitute the newly elected Knox County District Attorney for the outgoing District Attorney named in prior complaints; to clarify that he was suing the defendants in their individual capacities; and to add additional constitutional challenges to the Tennessee Plan. [R. 24].

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave should freely be given to amend a complaint when the interests of justice require. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reasons – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . futility of the amendment, etc. – then leave sought should, as the rules require, be 'freely given.'"). The denial of an opportunity to amend is within the discretion of the district court. *Id.*

In this case, despite his many attempts to amend his complaints, Mr. Moncier has failed to cure his lack of standing. His most recent proposed amended complaint and proposed revisions would be futile because they too fail to establish standing for Mr. Moncier to pursue his challenge to Tennessee's method for selecting and retaining appellate judges. Additionally, Mr. Moncier's inclusion of a constitutional challenge to Tenn. Code Ann. § 2-7-133(i) would be futile because, unlike the Ohio election laws at issue in *Anderson v. Calebressi*, Tennessee law does not provide for the open election of appellate-court judges, write-in or otherwise. The only elections for Tennessee appellate-court judges are the retain/replace elections for judges already in office. Even if this Court were to declare Tenn. Code Ann. § 2-7-133(i) unconstitutional, write-in votes for Tennessee appellate-court judges would still not be counted.

8

Case 3:14-cv-00353-PLR-CCS   Document 26   Filed 09/19/14   Page 8 of 9   PageID #: 753

votes counted. Mr. Moncier contends this code section unduly burdens Tennessee's voters' First and Fourteenth Amendment rights.

Mr. Moncier thereafter filed a second motion to revise his amended complaint to substitute the newly elected Knox County District Attorney for the outgoing District Attorney named in prior complaints; to clarify that he was suing the defendants in their individual capacities; and to add additional constitutional challenges to the Tennessee Plan. [R. 24].

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave should freely be given to amend a complaint when the interests of justice require. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reasons – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . futility of the amendment, etc. – then leave sought should, as the rules require, be 'freely given.'"). The denial of an opportunity to amend is within the discretion of the district court. *Id.*

In this case, despite his many attempts to amend his complaints, Mr. Moncier has failed to cure his lack of standing. His most recent proposed amended complaint and proposed revisions would be futile because they too fail to establish standing for Mr. Moncier to pursue his challenge to Tennessee's method for selecting and retaining appellate judges. Additionally, Mr. Moncier's inclusion of a constitutional challenge to Tenn. Code Ann. § 2-7-133(i) would be futile because, unlike the Ohio election laws at issue in *Anderson v. Calebressi*, Tennessee law does not provide for the open election of appellate-court judges, write-in or otherwise. The only elections for Tennessee appellate-court judges are the retain/replace elections for judges already in office. Even if this Court were to declare Tenn. Code Ann. § 2-7-133(i) unconstitutional, write-in votes for Tennessee appellate-court judges would still not be counted.

Accordingly, the interests of justice do not require allowing Mr. Moncier to amend his complaint. The two motions to amend, [R. 20, 24], are denied.

**3. Conclusion**

Mr. Moncier's challenges to the Tennessee Plan are not the first. Litigants have challenged the Tennessee Plan under numerous legal theories including both the Tennessee Constitution and the United States Constitution. Because the Tennessee Supreme Court has held the Tennessee Plan does not violate the Tennessee Constitution,[3] and there is no federally protected right to be a candidate for a state-court judgeship, these challenges cannot prevail. If Mr. Moncier or anybody else wants the State of Tennessee to use different procedures to select and retain its appellate-court judges, they should exercise their right to petition the legislature and lobby for a change in state law.

Because Mr. Moncier lacks standing to challenge the Tennessee Plan generally, and lacks a federally protected interest in being a candidate for state appellate-court judge, his motions for injunctive relief, [R. 3, 12], are **DENIED**, and the defendants' motion to dismiss, [R. 9], is **GRANTED**. The plaintiff's amended complaint is **DISMISSED** in its entirety under Rule 12(b)(1) and 12(b)(6).

                                                                                             _____
                                                                                             **UNITED STATES DISTRICT JUDGE**

---

[3] *See State ex rel. Higgins v. Dunn*, 496 S.W.2d 480, 489 (Tenn. 1978); *State ex rel. Hooker v. Thompson*, 1996 WL 570090 (Tenn. Oct. 2, 1996); *Hooker v. Haslam*, -- S.W.3d --, 2014 WL 1010367 (Tenn. Mach 17, 2014).